# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| AMY SHEPARD, | ) | |
| | ) | |
| MARISSA MOFFATT | ) | |
| | ) | |
| JANE DOE 1, JANE DOE 2, | ) | |
| JANE DOE 3, JANE DOE 4, | ) | |
| JANE DOE 5, JANE DOE 6, | ) | |
| JANE DOE 7, and JANE DOE 8 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No |
| | ) | |
| | ) | |
| MERCY HOSPITAL SPRINGFIELD | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

**COMES NOW,** Plaintiffs, by and through counsel, and bring this action against the above-listed Defendant, **MERCY HOSPITAL SPRINGFIELD,** on the grounds set forth herein:

## I.    FACTUAL BACKGROUND

1. On September 30, 2021, Mercy Hospital Springfield put in place a vaccination mandate that required all co-workers to receive the COVID-19 vaccine.

2. This mandate was communicated to the employees in July 2021, giving employees three months to prepare.

**3.** After the September 30, 2021, deadline, employees either had to receive the vaccine or, if they were granted a religious exemption, were then subject to "rigorous masking."

**4.** "Rigorous masking" was the only reasonable accommodation offered by Mercy to those employees that did request or received an exemption.

**5.** Many employees' religious beliefs prohibit the wearing of headgear or face coverings, which Mercy's sole reasonable accommodation did not account for.

**6.** Employees that decided not to mask as a result of it being against their religious beliefs were let go or suggested that they should quit to maintain good standing within Mercy.

**7.** Employees that held sincere religious beliefs against putting unknown substances in their bodies were also terminated due to not taking the vaccination.

**8.** Even if this Court should determine masking was a reasonable accommodation, Plaintiffs don't believe it is, but the question would still remain as to if this "reasonable accommodation" led to further discrimination to the employees it was imposed on. In essence were these Plaintiffs subject to disparate treatment?

**9.** Employees that did receive a religious exemption were, as stated above, subject to rigorous masking and testing even with no symptoms.

**10.** The employees have indicated that the type of mask for some was different than that of vaccinated people, which made non-vaccinated employees readily apparent to everyone in the workplace.

**11.** Due to being subject to different masking rules and testing, the employees

that did receive an accommodation feel as if they have been singled out and that this target painted on them by the vaccination policy led to their discrimination and alienation from the workplace.

12. The use of masking was used by the hospital as more of a punitive measure against those who did not believe in getting the vaccine and served to discriminate against them.

13. Mercy Hospital Springfield's stated goal was to better protect the patients of the hospital from COVID-19, and as of October 28, 2021, reported that the workforce for Mercy was nearly 100% vaccinated.

14. The workforce being near 100% vaccinated makes the act of not providing exemptions are even more questionable, as Mercy was over the standard "herd" immunity mark and didn't necessarily need to step on the employee's religious beliefs.

15. Whether one has a belief in the COVID-19 shot or not, it is undeniable that there was an element of mass hysteria in the general public as a result of such a serious disease. This heightened sensitivity to the disease made these employees more susceptible to discrimination.

16. The employees have reason to disagree that the COVID-19 vaccine promotes safety, aside from their religious beliefs, but the safety of the vaccine is cause for concern for the employees.

17. The Centers for Disease Control ("CDC") has a statistical system that has been tracking the various Covid-19 related issue due to the vaccine. This system is called the Vaccine Adverse Event Reporting System ("VAERS").

**18.** According to the VAERS system, COVID-19 vaccinations have already caused serious harm. These harms range from cause of death to substantial injuries and potential long-term effects that have not availed themselves yet. According to VAERS tracking history, the COVID-19 vaccination in 2021 accounted for 59.48% of the total vaccination deaths in the United States' history. In 2022, it added an additional 20.07% of the total deaths from vaccines. (Exhibit B)

**19.** Yearly tracking for vaccination deaths according to (Exhibit B) started from 1986 on and is continuing to this day. In the 36-year period between 1986-2022, the COVID-19 vaccination has accounted for 79.55% of the vaccination deaths in America. In addition, another 9.02% of deaths are attributed to the COVID-19 vaccination at an unknown date, meaning the number could be as high as 88.57% of recorded vaccination deaths are due to COVID-19.

**20.** Plaintiffs have all gone through the necessary steps to obtain the license required to work in their desired field. The Plaintiffs were issued an ultimatum of disregard their religion or have to resign from the profession that they have dedicated their adult lives to.

**21.** Defendant's choice to enact a mandatory vaccination policy in order for the Plaintiffs to keep their jobs is unconstitutional and religiously discriminatory. Furthermore, the use of "rigorous masking" as an accommodation is unconstitutional and religiously discriminatory as well.

**22.** Plaintiffs have suffered monetary damages, in addition to emotional damage and stress as a result of being discriminated against for simply following their religious beliefs.

**23.** Plaintiffs were also subjected to an increased risk of death or injury as a result of the vaccine that was rapidly pushed out to the public and did not undergo the more standard screening that vaccines of the past had been subjected to.

**24.** Plaintiffs have been subjected to Title 7 violations and a violation of their right to privacy and bodily autonomy granted to them by the Constitution.

### II PARTIES

**25.** Plaintiff Marissa Moffatt was employed by Mercy when the vaccine mandate went into effect. Mrs. Moffatt was granted a pregnancy exemption to the COVID-19 vaccine. However, when this pregnancy exemption expired, Mercy prevented her from applying for a religious exemption and denied her request. Mrs. Moffatt was subsequently terminated by Mercy.

**26.** Plaintiff Amy Shepard was employed by Mercy when the vaccine mandate went into effect. Mrs. Shepard applied for a religious exemption, which was granted by Mercy. However, as a condition of this exemption, she was required to wear special masking and undergo weekly testing regardless of symptoms. When Ms. Shepard raised concerns to upper management, her questions went unaddressed. In October 2021, she submitted a religious exemption request for the flu shot, which was denied. Mercy terminated Ms. Shepard in November 2021 for non-compliance with the flu shot requirement.

**27.** Plaintiff JANE DOE 1 is a registered diagnostic cardiac sonographer who had worked for Mercy for seven years. Mrs. Doe applied for a religious exemption and was denied twice. She was then suspended without pay and terminated as a result of being denied and issued no reasonable alternatives.

**28.** Plaintiff JANE DOE 2 was employed by Mercy and was denied a religious exemption to the COVID-19 vaccine. Mrs. Doe stated to Mercy that this vaccine violated her religious beliefs, to which Mercy stated that she had not adequately explained her beliefs.

**29.** Plaintiff JANE DOE 3 was employed by Mercy when the vaccine mandate went into effect, she then applied for a religious exemption to the vaccine and was denied. After publicly voicing the concerns she had for the vaccine, she was falsely reprimanded in an act of retaliation by Mercy.

**30.** Plaintiff JANE DOE 4 was employed by Mercy when the vaccine mandate went into effect. Mrs. Doe applied for a religious exemption for the vaccine and was denied. This denial led to Mrs. Doe being fired by Mercy as a result of not taking the vaccine.

**31.** Plaintiff JANE DOE 5 was employed by Mercy when the vaccine mandate went into effect. Mrs. Doe applied for a religious exemption and was not granted it.

**32.** As a result, she had to wear a different mask than other vaccinated people, which made her a target for discrimination. Mrs. Shepard then applied for a religious exemption from the flu shot, which was not granted, and she was then terminated.

**33.** Plaintiff JANE DOE 6 was employed by Mercy when the vaccine mandate

went into effect. Mrs. Doe applied for a religious exemption and was denied.

**34.** Plaintiff JANE DOE 7 was employed by Mercy when the vaccine mandate went into effect. Mrs. Doe applied for a religious exemption and was denied. She was then essentially asked to prove her religion to the hospital.

**35.** Plaintiff JANE DOE 8 was employed by Mercy when the vaccine mandate went into effect. Mrs. Doe applied for a religious exemption and was denied.

## II.    <u>JURISDICTION AND VENUE</u>

**36.** This Court, according to 28 U.S.C § 1331, has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**37.** This Court has the authority to grant any requested declaratory relief sought under 28 U.S.C. § 2201, as well as any injunctive relief and monetary relief under 28 U.S.C. § 1343(a).

**38.** This Court is the correct venue for these claims under 28 U.S.C § 1391. The Plaintiffs' claims arise in the state of Missouri, due to the acts committed in the Southern Division of Missouri, and the Defendant has the sufficient contacts within the state to subject them to personal jurisdiction in the Southern Division of Missouri. These circumstances satisfy section (b), (c), and (d) of 28 U.S.C § 1391.

**39.** Plaintiffs satisfy the "case-or-controversy" requirement of Article III of the Constitution and have standing to sue. "The plaintiff must have suffered an 'injury in fact' which is (a) concrete and particularized, and b) 'actual or imminent', not 'conjectural or hypothetical'; (2) there must be a causal connection between the injury and the conduct complained of, meaning the injury has to be fairly traceable to the challenged action of the

defendant; (3), it must be "likely," as opposed to merely speculative that the injury will be 'redressed by a favorable decision.'" Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Management Dist.., 647 F.3d 1296, 1302 (11th Cir. 2011).

### III.  COUNTS

### COUNT I

### RELIGIOUS  DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

40. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

41. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, applies to private employers with 15 or more employees. Defendant Mercy, based in Springfield, Missouri, reports employing over 7,000 hospital-based coworkers, far exceeding Title VII's jurisdictional threshold.

42. Mercy operates in Missouri, where state law—specifically the Missouri Human Rights Act—permits religiously affiliated corporations or associations that are wholly owned and operated by religious institutions to give employment preference to members of their own faith. However, it is not clear that this exemption lawfully applies to Mercy. Plaintiffs dispute the application of this exemption and assert that Mercy's reliance on this defense is misplaced, as it does not absolve Mercy from its obligations under federal law. Plaintiffs bring this action in federal court to ensure that Title VII's protections against religious discrimination are fully enforced.

43. Under Title VII, "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to

reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

44. Each Plaintiff submitted a timely request for a religious exemption from Defendant's COVID-19 vaccine requirement based on sincerely held religious beliefs. Defendant denied all exemption requests, except for one, and in that single instance, imposed masking requirements in a manner that Plaintiffs allege was discriminatory and inconsistent with the employee's religious convictions.

45. Title VII mandates that upon notice of a request for religious accommodation, an employer must provide a reasonable accommodation unless doing so would impose an undue hardship. See 42 U.S.C. § 2000e(j). No such hardship existed here.

46. Defendant did not engage in any individualized assessment of accommodation feasibility. Instead, it issued blanket denials and mandated vaccination, without regard to the sincerity or nature of Plaintiffs' religious objections or the availability of reasonable alternatives.

47. As described in Paragraphs 13 and 14, Defendant publicly reported a near 100% employee vaccination rate. Permitting a small number of religious exemptions would not have undermined that benchmark or posed any meaningful risk to public health or business operations. The minimal impact of accommodating Plaintiffs' requests further underscores the absence of undue hardship.

48. Rather than engaging in an interactive process to explore reasonable accommodations, Defendant dismissed Plaintiffs' beliefs as illegitimate and insisted on compliance with its policy, in some cases expressly questioning the sincerity of Plaintiffs'

religious convictions.

**49.** In the one instance where an accommodation was nominally offered—masking—Defendant imposed it in a manner that both contravened the employee's religious beliefs and singled the employee out for differential treatment.

**50.** While masking may, under certain circumstances, constitute a reasonable accommodation, when such an accommodation itself violates an employee's religious beliefs, it is insufficient and legally inadequate under Title VII.

**51.** Furthermore, the method of implementation—requiring a visibly distinct mask that signaled vaccination status—effectively labeled the employee as unvaccinated, thereby exposing them to stigmatization, ostracization, and further discrimination from peers and supervisors.

**52.** Defendant's failure to accommodate Plaintiffs' religious beliefs, along with its discriminatory enforcement of its vaccine and masking policies, constitutes a violation of Title VII. Plaintiffs seek all remedies available under federal law, including back pay, reinstatement or front pay, compensatory and punitive damages, attorneys' fees, and all other relief the Court deems just and proper.

## COUNT II

## DEFENDANT HAS VIOLATED THE RIGHT TO BODILY AUTONOMY AND BODILY INTEGRITY THAT IS CARVED OUT IN THE 14TH AMENDMENT

**53.** Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

**54.** The Fourteenth Amendment of the United States Constitution includes a right to personal bodily autonomy and bodily integrity, Defendant violated this set forth right

of the Plaintiffs.

**55.** There exists a fundamental right to refuse medical treatment. From this very state came the ruling from <u>Cruzan.</u> Cruzan demonstrates that the refusal of medical treatment is a fundamental right as affirmed by the Supreme Court. A basic summary of <u>Cruzan</u> is that a person has to provide evidence in regard to withdrawing from life sustaining treatment. (<u>Cruzan v. Dir.::,</u> <u>Mo. Dep't of Health,</u> 497 U.S. 261,1990 U.S. LEXIS 3301).

**56.** In this case at hand there are no incompetent people, simply people profusely expressing their right that they do not wish to partake in the Covid-19 vaccine.

**57.** There has been no interest demonstrated by the Defendants that could possible justify their use of a mandatory vaccine. In addition, the nature of the vaccine is that of an uncertain untested one and has an uncommonly high rate of death.

**58.** Plaintiffs contend that the forced vaccination of themselves does not actual protect the interest Mercy is trying to serve. Mercy states the goal is to protect the patients and other workers present at the facility. As shown above Mercy is very likely over the herd immunity rate and thus there is not increased risk to the cliental. In addition, if the vaccine set forth is deemed to be effective then the few non vaccinated individuals should essentially pose no threat to the individuals that are vaccinated as the vaccine is "supposed" to guard against that threat.

## COUNT III

### DECLARATORY JUDGMENT

**59.** Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

**60.** Plaintiffs request that a declaratory judgment that the Defendant's implemented mandate was and is unenforceable because it blatantly violates Title 7 and the 14th Amendment of the Constitution of the United States. In addition, the mandate unreasonably exposed the employees to physical harm from an unsafe vaccination.

**61.** The Defendant attempted and successfully leveraged the Plaintiffs jobs against them if they did not participate in the vaccine. Defendant had no legal right to do this to these Plaintiffs and did not satisfy their goal of protecting the health of the patients as these workers being unvaccinated would still satisfy herd immunity.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request the following relief:

**62.** Declare Defendant's Mandate harmed the Plaintiffs.

**63.** Restore Plaintiffs' lost earnings as a result of Defendant Mandate enforcement.

**64.** Award Plaintiffs damages in relation to having to search for a new job.

**65.** Award compensatory and punitive damages against the Defendant.

**66.** Grant Plaintiffs their cost and attorney fees

REQUEST FOR JURY TRIAL

Respectfully submitted,

*/s/ Kristi S. Fulnecky*
Kristi S. Fulnecky, MO Bar# 59677

FULNECKY LAW, LLC
2627 W. Republic Rd. Suite A-108
Springfield, MO 65807
Phone No. 417-882-1044
Kristi@fulneckylaw.com

ATTONERY FOR THE PLAINTIFF'S

*Amy Shepard* VERIFICATION

AMY SHEPARD, Plaintiff

State of Missouri        )
                         )      ss.
County of *Greene*       )

*Amy Shepard*_____, of lawful age, being duly sworn on her oath, states that she is the Plaintiff

named above and that the facts stated in the petition are true according to her best knowledge and belief.

Subscribed and sworn to before me this *20* day of *June*, 20*25*.

My commission expires:                    *Jenny Tune*_____

*6/27/2028*_____                    Notary Public

Jenny Tune
Notary Public, Notary Seal
State of Missouri
Lawrence County
My Commission Expires 6/27/2028
Commission # 20373728

13



VERIFICATION

Marissa Moffatt, Plaintiff

State of Missouri )
                  )       ss.
County of Greene  )
Marissa Moffatt_____, of lawful age, being duly sworn on her oath, states that she is the Plaintiff named above and that the facts stated in the petition are true according to her best knowledge and belief.

Subscribed and sworn to before me this _20_ day of _June_, 20_25_.

My commission expires:

6/27/2028

_____
Notary Public

Jenny Tune
Notary Public, Notary Seal
State of Missouri
Lawrence County
My Commission Expires 6/27/2028
Commission # 20373726

14

Case 6:25-cv-03163-MBB    Document 1    Filed 06/20/25    Page 14 of 14